# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | CASE NO.: 1:12-cr-043 (5) |
| | ) | |
| Plaintiff | ) | |
| | ) | JUDGE **MICHAEL R. BARRETT** |
| V. | ) | |
| | ) | |
| | ) | **SENTENCING MEMORANDUM** |
| **MARCELLUS J. GILREATH** | ) | **OF DEFENDANT MARCELLUS J.** |
| | ) | **GILREATH** |
| | ) | |
| Defendant | ) | |

The Defendant, Marcellus J. Gilreath, is scheduled to be sentenced by this court on June 27, 2014. This Memorandum is being submitted by counsel for Marcellus Gilreath for this court's consideration in imposing an appropriate sentence for Dr. Gilreath.

Respectfully submitted,

By: _____

**JAMES M. JOHNSON** (0012815)
110 Hoyt Block Building
700 West St. Clair Avenue
Cleveland, Ohio 44113-1287
Phone: (216) 615-9838
Fax: (216) 566-9966
jmjohnsonesq@gmail.com

**COUNSEL FOR MARCELLUS
GILREATH**

<u>PROOF OF SERVICE</u>

A copy of the foregoing Sentencing Memorandum of Defendant, Marcellus J. Gilreath, has been electronically filed with the U.S. District Court this 26th day of June, 2014 via the Court's ECF filing system and Notice will be sent to all counsel of record by operation of the court's ECF system.

By: _____

**JAMES M. JOHNSON** (0012815)

# MEMORANDUM

The Defendant, Marcellus Gilreath, and counsel have reviewed the final PreSentence Report and respectfully requests that this Honorable Court consider and grant a downward departure or variance pursuant to U.S.S.G. Subsection 5H1.4. For the following reasons the Defendant would ask that this Court not impose a sentence of six (6) months incarceration, as recommended in the final PreSentence Report, but instead impose a non-custodial sentence upon Dr. Gilreath.

Dr. Gilreath deeply regrets his involvement in the matter that brings him before this court and fully understands the nature and seriousness of the crime he committed, but also feels that for the reasons outlined below, the imposition of a non-custodial sentence would not demean the seriousness of the offense and would provide an adequate and just punishment, would afford adequate deterrence to future criminal conduct on the part of Dr. Gilreath and would protect the public from further crimes of this nature being committed by Dr. Gilreath.

Dr. Gilreath worked at the pain clinic in question for a six-month period of time and as a result of his conduct in which he improperly provided prescriptions for pain medications, conduct which resulted in this case against him and has brought him before this court, he is no longer practicing medicine. On July 5, 2013 Marcellus Gilreath offered to permanently surrender to the State Medical Board of Ohio his Certificate to Practice Medicine and Surgery and on July 10, 2013 the State Medical Board of Ohio ratified, and thus accepted, his Permanent Surrender of Certificate to Practice Medicine and Surgery. See exhibit A attached hereto. Also, on July 12,

2013 Dr. Gilreath signed an agreement of Voluntary Surrender of Controlled Substances

Privileges with the Drug Enforcement Agency. See Exhibit B attached hereto. Therefore, Dr.

Gilreath cannot commit the same criminal conduct that resulted in this case.

Furthermore, the surrendering of the right to practice medicine, is a substantial penalty in

and of itself. The court can consider this factor in imposing sentence. In **United States v.**

**Gaind,** 829 F. Supp 669, the court did this very thing. In **Gaind** the defendant lost his business

as a result of his criminal conduct and later conviction. In reducing the sentence imposed the

court stated:

> *"In the present instance, the destruction of the defendant's business has already achieved to a significant extent some although not all of the objectives otherwise required to be sought through the sentencing process. Elimination of the defendant's ability to engage in similar or related activities--or indeed any major business activity--for some time, and the substantial loss of assets and income resulting from this have decreased for the foreseeable future his ability to commit further crime of the type he was tempted to undertake, and constitutes a source of both individual and general deterrence. Others engaged in similar activities or considering engaging in them have doubtless already learned through informal sources that loss of the business entity involved is an obvious consequence of such illegal behavior.*
> 
> > *Because of the destruction of the defendant's testing business, the necessity for achieving the purposes of sentencing through sentencing itself has been reduced. The Sentencing Guidelines do not consider the situation presented by complete presentence destruction of a major business previously owned and operated by the defendant as a result of discovery of the crime, where this destruction achieves in part the purposes of the sentence itself."*

Just as in **Gaind**, the Defendant herein has lost his "business", which is the right and

privilege to practice medicine. A privilege that Dr. Gilreath worked very long and hard to

achieve and which, potentially, could be a very lucrative right to practice in a field in which

many people earned substantial amounts of money and achieve much prestige. Just as in **Gaind**,

the loss of Defendant's ability to practice medicine and write prescriptions has already achieved the objectives otherwise required to be sought through the sentencing process. Elimination of the defendant's ability to engage in similar or related activities--any practice of medicine and the ability to write prescriptions--**permanently**, and the substantial loss of the ability to earn a living by practicing medicine and the income resulting from this have been completely destroyed and his ability to commit further crime of the type he committed herein has also been eliminated, and constitutes a source of both individual and general deterrence. Other physicians engaged in similar activities or considering engaging in them will clearly be deterred when they learn that loss of the right to practice medicine is an obvious consequence of such illegal behavior. Because of the loss of the defendant's ability to practice medicine and to write prescriptions, the necessity for achieving the purposes of sentencing through sentencing itself has been greatly reduced or even eliminated. The Sentencing Guidelines do not consider the situation presented by complete PreSentence destruction of a major source of livelihood previously enjoyed by the defendant as a result of discovery of the crime, where this destruction achieves in part the purposes of the sentence itself.

Furthermore, the United States Supreme Court in **United States v. Knights,** 534 U.S. 112 (2001), that probation itself is a deterrent to crime. The Court stated:

*"**Probation**, like incarceration, is 'a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.' " Griffin, supra, at 874 (quoting G. Killinger, H. Kerper, & P. Cromwell, Probation and Parole in the Criminal Justice System 14 (1976)). Probation is "one point . . . on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." 483 U.S., at 874. Inherent in the very nature of probation is that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled.' " Ibid. (quoting Morrissey v. Brewer,*

*408 U.S. 471, 480 (1972)). Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens."*

Certainly Dr. Gilreath would not be afforded the absolute liberties that law-abiding citizens enjoy. The loss of his absolute liberty, coupled with the loss of his ability to practice medicine and write prescriptions, adequately punishes him for his criminal activity.

In addition, it should be pointed out to the court that Dr. Gilreath played a rather minor role in the overall criminal activity encompassed by this case. Dr. Gilreath only worked at the clinic in question for six months, he was not an owner of the clinic or a partner of the owners and as a result did not profit from this activity other than the payment of his salary. Although the nature of the treatment rendered by Dr. Gilreath has been called into question, none of his patients were hospitalized for overdoses and certainly none of them died as a result of the prescriptions that he wrote. It seems draconian to impose six (6) months incarceration when Dr. Gilreath only worked at the clinic for 6 months.

Dr. Gilreath has also met all of the conditions imposed upon him by the Court and the Probation Department for his release from custody during the time this case has been pending.

Finally, it must be pointed out to the court that Dr. Gilreath suffers from a variety of medical conditions for which he is currently receiving ongoing treatment. The matters for which Dr. Gilreath is receiving treatment are as follows:

### Diagnoses Followed Either by Pain Medicine or Physical Medicine

•Displacement of cervical intervertebral disc without myelopathy. (At-home physical therapy as well as prescribed narcotics on as-needed basis. Pain medicine has recommended possible interventional pain procedure after left shoulder rotator cuff repair).

•Degeneration of cervical intervertebral disc. (See 1 above.)
•Cervical spondylosis. (See 1 above.)
•Disc displacement, NOS (not otherwise specified – see 1 above)

### *Diagnoses Followed by Mental Health (either Psychiatry or Psychology)*

•Adjustment Disorder with mixed emotional features. (Individual therapy with psychologist.)
•Mild cognitive disorder. (Followed by all on mental health team.)
•HIV-associated neurocognitive disorder. (Diagnosed by neuropsychologist and endorsed by neurologist.)
•Borderline personality disorder.
•Trichotillomania.
•Danger of harm to self.
•Major depression with melancholia, recurrent, with psychotic features. (Treated solely by psychiatry with anti-depressants and anti-psychotics.)
•Obsessive-compulsive disorder.

### *ENT Diagnoses Followed by Primary-Care*

•Allergic rhinitis, perennial. (Daily antihistamines. Awaiting allergy referral for possible desensitization program.)
•Chronic frontal sinusitis.

### *Diagnoses Followed by Orthopaedic Surgery*

•Right thumb joint painful on movement (probable tenosynovitis), post incision and drainage. (Resolving.)
• Full-thickness rotator cuff tear of supraspinatus muscle, left shoulder. **(Surgery performed on May 29, 2014 to be followed by up to 6 months of shoulder rehabilitation.)**
•Partial-thickness tears of multiple tendons, right shoulder, with SLAP lesion. (Treated with at-home physical therapy, topical anesthetics, occasional prescribed narcotics, and follow-up radiological imaging.)
•Rotator-cuff (capsule) sprain/strain. (See 3 above.)

### *Diagnoses Followed by Pulmonary*

•Obstructive Sleep Apnea (OSA), requiring nightly nasal CPAP (continuous positive airway pressure), with nasal mask.
•Solitary pulmonary nodule, right lung base. (Followed jointly with Hematology-Oncology Service, with every 6 month CT scanning, to screen for enlargement. If so, **cardiothoracic surgeons** recommend wedge resection of lung with lymph-node sampling.)

- Chronic shortness of breath.
- Asthma. (Allergy referral pending.)
- Non-specific abnormal findings (radiological) of lung field.
- Sleep-Disturbance, NOS (not otherwise specified, see 1 above.)

## *Diagnoses Followed by Gastroenterology*

- Hemangioma of liver. (Has been followed by radiological studies.)
- Enlarged liver (mild). (See 1 above.)
- Schatzki ring of esophagus secondary to chronic reflux. (Treated with high-dose proton-pump inhibitor.)
- Enlarged spleen (mild). (See 1 above.)
- Non-alcoholic fatty liver disease (steatosis). (Treated with diet/exercise/weight-loss.)
- Stricture of esophagus. (See 3 above and 8 below.)
- Microscopic colitis, biopsy proven. (Treated with medications on as-needed basis.)
- Reflux esophagitis. (See 3 above.)
- Gastritis and duodenitis (mild). (See 3 above.)
- Chronic loose stools secondary to 7 above.
- Diverticulosis. (Followed expectantly.)
- Internal hemorrhoids. (Followed expectantly.)
- Evidence of gastroparesis by EGD. (Recent diagnosis with no treatment yet initiated.)

## *Diagnoses Followed by Endocrinology*

- Hypogonadotropic hypogonadism. (Treated with testosterone injections.)
- Obesity. (Treated with diet and exercise.)
- Vitamin D deficiency. (Treated with supplements.)
- Hypertriglyceridemia/hyperlipidemia. (Treated with diet and antilipemic.)
- Hypothyroidism. (Treated with supplementation.)

## *Diagnoses Followed by Hematology-Oncology*

- Thrombocytopenic disorder.
- Immunoglobulin A deficiency.
- See *Pulmonary Diseases, #2* above.

## *Diagnosis Followed by Nephrology*

- Stage III chronic kidney disease. (Labs closely followed.)

***Diagnosis Followed by Infectious Diseases***

•Human Immunodeficiency Virus (HIV) disease.  (Treated with medications.)

Certainly Dr. Gilreath is currently undergoing medical treatment for a variety of medical conditions, the most serious of which are his mental conditions and the fact that he is HIV positive, and it is submitted that he would be best served, and probably the public would be best served, by him receiving a non-custodial sentence that would allow him to continue his treatment with his current medical providers, rather than receiving treatment through the prison system.

Therefore, for the foregoing reasons, the Defendant would ask that this Court not impose a sentence of six (6) months incarceration, as recommended in the final PreSentence Report, but instead impose a non-custodial sentence upon Dr. Gilreath.

Respectfully submitted,

By:_____

**JAMES M. JOHNSON** (0012815)
110 Hoyt Block Building
700 West St. Clair Avenue
Cleveland, Ohio 44113-1287
Phone: (216) 615-9838
Fax: (216) 566-9966
jmjohnsonesq@gmail.com